TERESA, The MARY. See Case No. 9,228.

TERRE HAUTE DRAW–BRIDGE CO. (JOLLY v.). See Case No. 7,441.

TERREL (UNITED STATES v.). See Cases Nos. 16,452 and 16,453.

TERRELL (BROCK v.). See Case No. 1,914.

## Case No. 13,835.

### In re TERRY.

[2 Biss. 356; [2] 4 N. B. R. 126 (Quarto, 33); 3 Chi. Leg. News, 106.]

District Court, E. D. Wisconsin. Aug. Term, 1870.

BANKRUPTCY — JUDGMENT BY CONFESSION — TIME OF ENTRY.

1. Where a creditor has reasonable cause to believe his debtor insolvent, he acquires no preference in bankruptcy over other creditors by taking from his debtor a promissory note with warrant of attorney to confess judgment, and levying an execution issued on said judgment note, on the debtor's stock of goods.
[Cited in Re Dunkle, Case No. 4,160.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

2. Although the warrant of attorney may have been given more than four or six months before the institution of proceedings in bankruptcy, yet if the lien of the execution only became operative within the six months, the creditor is entitled to no preference, and the limitations on the 35th and 39th sections [of the act of 1867 (14 Stat. 534, 536)] do not apply.

This was a petition by John J. Fairbanks, judgment creditor of Terry & Cleaver, bankrupts, for an order requiring the assignee to pay their execution in full from the proceeds of sales of property coming to his hands, on the ground that his execution was a lien upon the property.

A. R. R. Butler, for creditor.
Palmer, Hooker & Pitkin, for assignee.

MILLER, District Judge. John J. Fairbanks, a resident and business man in Milwaukee, at different times between the months of February and September, 1867, loaned to Terry & Cleaver, a firm in the same city, about $5,000. There were some propositions for a future business connection between these parties, which were not consummated. Under these propositions the money was loaned to the firm. In January or February, 1869, Fairbanks notified Terry & Cleaver that he wanted his money. He was then given to understand that Cleaver would take up the loan by the first of July of that year, or make him outside security that would be negotiable. Terry at that time stated to Fairbanks that he was not able to raise the money. The indebtedness was in book account, and continued in that form until February 23, 1869. Not being satisfied that the loan should continue in that form, Fairbanks insisted on security. Terry & Cleaver informed him that their business would not justify their drawing that amount out, but expressed a wish to give him any security they could. A note with warrant of attorney was given by Terry & Cleaver to Fairbanks for the money on the 23d of February, 1869, payable four months after date. The debtors were frequently urged for payment of the money or part of it, without effect; but until judgment was entered on the note, no part of the money could be collected of the firm in cash. Before the judgment was entered, Fairbanks demanded of Terry & Cleaver a statement of their business, which they refused. Fairbanks testified that he made every effort to induce an arrangement for the payment of the debt before entering up the judgment. May 9, 1870, judgment was entered on the note and warrant of attorney in the circuit court of Milwaukee county, for $5,584.49, and execution was issued thereon the same day, and Terry & Cleaver's stock of goods levied on. They had no intimation or knowledge in advance of these proceedings. Fairbanks gave no publicity to the fact of having the note, except to friends, in a business way, not creditors of Terry & Cleaver. The note was made payable to Fairbanks alone, and not to his order or to bearer, at the request of Terry & Cleaver, as they did not wish it to be made public or negotiated. Fairbanks told them they need have no fear of anything of the kind, that he should probably take the note home, and put it in his cash drawer, and leave it there until it matured, and of course it would be left there longer unless it was taken up. Terry testified that when giving the note he told Fairbanks it was preferring a creditor, and would not give him any security over other creditors. And before the note was given, they told Fairbanks if he pushed them it would break them up. Terry did not mention to any one their having given the note. Terry did not believe the note with warrant of attorney better security than a common note, and they did not intend thereby to give Fairbanks a preference over other creditors. And they told him if the note was a good security they would not give it to him. The money was used by the firm to replenish and increase their stock. The understanding was that Fairbanks should take the note out of the store and keep it. The interest for the year 1869 was not paid.

Proceedings in bankruptcy against Terry & Cleaver were commenced by creditors, June 6. 1870. These debtors were adjudicated bankrupts, and an assignee was duly appointed. The marshal having by virtue of a warrant taken possession of the stock of goods levied on by the sheriff under the execution in favor of Fairbanks, and sold them pursuant to an agreement between the parties, Fairbanks presented his petition, praying an order of court for the payment of the amount of his execution out of the proceeds of sale. To this petition the assignee and petitioning creditors in bankruptcy interpose an answer. "They object to the order for payment; that said bankrupts, within four months prior to the commencement of bankruptcy proceedings, to wit: on the 9th day of May, 1870, they being bankrupt and insolvent at that time, did suffer their property (their entire stock of goods) to be taken on legal process, to-wit, the execution issued on the judgment mentioned in the petition of said Fairbanks, with intent thereby to give a preference to said John J. Fairbanks, a creditor of said bankrupts, and with intent thereby to defeat and delay the operation of the bankrupt act, and that at the time said property was so taken, said Fairbanks had reasonable cause to believe that said Edward Terry and Albert B. Cleaver were insolvent, and that a fraud on the bankrupt act was intended. That Fairbanks' judgment was rendered on a note dated February 23, 1869, payable four months after date, with a warrant of attorney to confess judgment thereon, of same date, by said Terry & Cleaver to said Fairbanks; the said Terry & Cleaver being bankrupt and insolvent on said 23d of February, 1869, and so continued until the commencement of proceedings in bankruptcy against them, all of which said Fairbanks well knew; the pre-

tended lien of said Fairbanks referred to in his petition being of no validity or effect, the same being void under the bankrupt act." Fairbanks supplied Terry & Cleaver with money to the amount of $5,000 through the summer of 1867, under some understanding between the parties that upon certain conditions a co-partnership might be entered into between them. The only written evidences of debt consisted of entries in a book in the nature of charges against Terry & Cleaver as debtors for money loaned, until February 23d, 1869, the day on which the judgment note was given. The parties, Fairbanks, Terry and Cleaver, resided in Milwaukee, and had very frequent interviews respecting this loan and securing it. There is no doubt, I think, but that Terry & Cleaver were in an insolvent condition in their business at the date of the note. The note was not given for a present consideration, but to secure a pre-existing debt. Fairbanks had notice from Terry & Cleaver when the note was received by him, that if he pushed them their business would be broken up, and that they could not take the amount of that debt out of their business. He also had notice that a judgment note, taken under these circumstances, was not valid as against other creditors. The condition of these debtors did not improve, but grew worse, so that they were not able to pay the interest on the note for the year 1869. There can be no doubt but that Terry & Cleaver were insolvent, and that Fairbanks had reasonable cause to believe them so at the date of the levy of his execution on the stock of goods.

2 [Terry & Cleaver did not consider that, by the judgment note, they were giving a preference to Fairbanks, as they believed a judgment and execution would not be available, and as a preference over their other creditors. This does not help the case, for the legal consequence of the note, with warrant to confess judgment, was to be followed by an execution, levy, and sale of their property to the exclusion of the other creditors. These debtors committed an act of bankruptcy by giving the note with warrant of attorney to confess judgment, and also by suffering their property to be taken in execution to satisfy said judgment. By section 39 of the bankrupt act, it is an act of bankruptcy in an insolvent debtor to give a warrant to confess judgment, or to suffer his property to be taken on legal process. Either of these acts is sufficient to enable his creditors to proceed against him in bankruptcy by petition, provided such petition is brought within six months after the act of bankruptcy shall have been committed. One act of bankruptcy charged in the petition of creditors against Terry & Cleaver is the suffering their stock of goods to be taken.] 2

On the execution of Fairbanks, on the 9th of May, 1870, which was about a month be-

fore the petition in bankruptcy was brought, the limitation of six months did not apply. But if the giving the note with warrant of attorney to confess judgment had been the only act of bankruptcy alleged in the petition against Terry & Cleaver, the limitation of six months would have barred the proceedings in bankruptcy.

It is contended that the limitation should also be applied to the claim of Fairbanks, as the note with warrant of attorney was given more than six months prior to the petition in bankruptcy. The cause of bankruptcy alleged in the petition against Terry & Cleaver, is that they suffered their stock of goods to be taken on execution in favor of Fairbanks. His claim of preference must rest on his execution and levy. The note with warrant of attorney was merely an evidence of a debt; and first became an available security by virtue of the levy under the execution. The note with warrant of attorney to confess judgment was given to Fairbanks in February, 1869, pursuant to his frequent importunities for security. Instead of having judgment entered and execution issued and levied on the goods of his debtors, who were not even paying the interest for the year 1869, he locked up the papers in his money drawer, where he retained them until the 9th of May, 1870. In all that time he had frequent opportunities of inquiring into the financial condition of his debtors. And in the course of that time the firm of Terry & Cleaver contracted debts to a large amount for borrowed money and for goods purchased on credit. It does not appear that these creditors had any knowledge of the existence of the judgment note before the service of the execution. If Fairbanks were permitted, after concealing the evidence of his intended preference over other creditors, to their prejudice for that length of time, to obtain by means of the execution payment of his debt in full, the great object of the bankrupt act, equality among creditors, would be frustrated. There can be no doubt but he had reasonable cause to believe Terry & Cleaver to be insolvent before and at the time he entered up judgment and issued execution.

For these reasons I am constrained to deny the prayer of the petition.

NOTE. The preference on a judgment note is obtained when the judgment is entered. Golson v. Niehoff [Case No. 5,524], Jan., 1871. It is not a sufficient answer to say that the warrant of attorney was given to secure a bona fide debt, and that at the time the creditor had no knowledge of the debtor's insolvency. The question depends upon his knowledge or information at the time he made his warrant operative. Id. That the giving a note with warrant of attorney is a preference, &c., see Campbell v. Traders' Nat. Bank [Id. 2,370], Jan., 1871; In re Dibblee [Id. 3,884]; Fitch v. McGie [Id. 4,835]. And a judgment may be a preference, and be set aside, even though obtained in due course of law, if suffered by debtor. Beattie v. Gardner [Id. 1,195]; Smith v. Buchanan [Id. 13,016].

It has been held by Blodgett, J., that under

certain circumstances the lien of an execution is transferred to assets in the hands of the assignee. In re Weeks [Case No. 17,350]. And the supreme court has lately decided that a creditor who, having reasonable cause to believe his debtor insolvent, commences suit in a state court, and obtains judgment, execution and levy, does not obtain a valid lien as against an assignee in bankruptcy proceedings commenced within four months subsequent to such judgment. Buchanan v. Smith [16 Wall. (83 U. S.) 277].